J-S72003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.A.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1332 MDA 2018 |

Appeal from the Order Entered August 3, 2018
In the Court of Common Pleas of Snyder County Civil Division at No(s):
OC-18-2018

| | | |
|---|---|---|
| IN RE: H.N.H., MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1333 MDA 2018 |

Appeal from the Order Entered August 3, 2018
In the Court of Common Pleas of Snyder County Civil Division at No(s):
OC-19-2018

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:  **FILED MARCH 05, 2019**

In these consolidate appeals, J.H. ("Father") appeals from the orders entered on August 3, 2018, which denied his petitions to involuntarily terminate the parental rights of R.H. ("Mother") to their two minor daughters, M.A.H. and H.N.H.[1]  After careful review, we affirm.

---

[1] This Court consolidated Father's appeals *sua sponte*.

The record reveals the following pertinent facts. Mother and Father were never married. They have two daughters together. M.A.H. was born in February of 2013. H.N.H. was born in August of 2014. The relationship between Mother and Father deteriorated during the summer of 2015. On September 25, 2015, Father filed a complaint for custody. Four days later, he filed a petition for special relief seeking sole legal and physical custody of M.A.H. and H.N.H., alleging that Mother was using drugs and engaging in activity that placed the children at risk. On November 20, 2015, Mother and Father entered into a mediated custody agreement providing shared legal and physical custody.

In January of 2016, Snyder County Children and Youth Services ("CYS") became involved with the family after CYS received a referral regarding concerns about Mother's alleged drug use. N.T., 8/2/18, at 6. Jenifer Weimer-Page, a CYS caseworker, attempted to discuss her concerns with Mother, but Mother refused to meet with her. *Id*. at 6, 8-9. Mother contacted Father to have him take custody of M.A.H. and H.N.H. in order to avoid CYS's involvement with the family. *Id*. at 6. Ms. Weimer-Page told Father that if he did not obtain custody of the children, CYS would have to enter into a safety plan with Mother that limited her to supervised visits. *Id*. at 6-7. Ms. Weimer-Page informed Father that she believed Mother's custodial periods should be supervised. *Id*. at 11.

On January 13, 2016, Father filed a petition for special relief seeking sole legal and physical custody of M.A.H. and H.N.H. On January 21, 2016,

the custody court awarded Father sole legal and physical custody of the children, and granted Mother "such periods of physical custody as the parties may, from time to time, agree, that agreement not to be unreasonably withheld." Custody Order, 1/21/16 at 1. Following the January 21, 2016 order, CYS closed its investigation. *Id*. at 10. While the custody order did not limit Mother to periods of supervised custody with her daughters, Father viewed Ms. Weimer-Page's recommendation as a mandate that Mother utilize CYS for supervised visitation. Moreover, he refused to permit Mother to have any form of interaction with the children until Mother agreed to his terms. However, when Mother eventually contacted CYS to administer the periods of physical custody, the agency advised her that it would not get involved in the custody dispute without a court order.

Mother did not contact M.A.H. or H.N.H. between early 2016 and July of 2018. *Id*. at 19-20. During that two-and-one-half-year period, Mother requested to see the children approximately 10 times, but she and Father could not agree on CYS supervision. *Id*. at 24. In the interim, Father married M.H. ("Stepmother") in August 2017, and both provided care for M.A.H. and H.N.H. *Id*. at 31-32, 56. Between 2016 and July of 2018, M.A.H. and H.N.H. did not receive any communications, clothing, or support from Mother. *Id*. at 22-24.

Mother offered to provide the children Christmas presents in 2016, but Father informed her that he did not want the inconvenience of explaining the gifts to M.A.H. and H.N.H. when they could not visit with her. *Id*. at 22.

- 3 -

Furthermore, Father advised Mother that he would have her arrested if she attempted to deliver the presents to his home. *Id*. at 22-23, 38. Similarly, during February 2017, Mother attempted to contact Stepmother on Facebook Messenger to make arrangements to give M.A.H. a birthday present. Not only was Mother prohibited from providing the gift, she was barred from wishing M.A.H. a happy birthday, and directed to stop messaging Stepmother about the issue. *Id*. at 81-83. Throughout this period, Father continued to deny Mother access to the children unless she submitted to a drug screen and agreed to utilize CYS for supervised visitation. *Id*. at 38.

Mother indicated that Father's threat of police involvement kept her from taking additional steps to see her daughters. She was incarcerated for drug-related offenses between April 2016 and July 2016, and for a probation violation from April 2017 to October 2017. *Id*. at 77. However, Mother has not tested positive for drugs since June of 2017. *Id*. at 63-64. Following her release from prison during October 2017, she obtained employment as a plumber earning $15.00 per hour and she maintained that position as of the date of the evidentiary hearing on August 2, 2018. *Id*. at 76, 88.

While Father precluded Mother's interactions with the children, he supported his daughters' contact with S.H. ("Maternal Grandmother"), who the children refer to as "Meemaw." *Id*. at 34. Father has no safety concerns with Maternal Grandmother, and he acknowledged the "kids really love her." *Id*. Maternal Grandmother visited with the children approximately once per

month. *Id*. at 33. However, at Father's directive, Maternal Grandmother excluded Mother from the visits at the risk of having Father terminate Maternal Grandmother's contact as well. *Id*. at 36. Nevertheless, Mother periodically contacted Maternal Grandmother for updates on her daughters' well-being. *Id*. at 108.

In March of 2018, Mother consulted with counsel with respect to a potential custody action, and then texted Father to let him know that she had hired an attorney to pursue additional custodial periods with the children. *Id*. at 84. On April 17, 2018, Mother's counsel sent a letter to Father's counsel seeking partial custody of M.A.H. and H.N.H. *Id*. at 39-40. Father countered on April 25, 2018, by filing petitions to involuntarily terminate Mother's parental rights to M.A.H. and H.N.H. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).[2]

The orphans' court directed that Father permit Mother to visit M.A.H. and H.N.H. prior to the evidentiary hearing. That visit occurred during July 2018. The interaction went well. M.A.H. ran to Mother immediately and was happy throughout their visit. *Id*. at 86. H.N.H. did not recognize Mother initially, however, after she learned of Mother's identity, she played with

_____

[2] As the petitions to terminate Mother's parental rights were filed simultaneous with Stepmother's report of intention to adopt, the petitions identify Stepmother as the petitioning party. Nevertheless, Father verified the termination petitions, and the orphans' court treated him as the petitioning party throughout the termination proceedings.

Mother, displayed affection, and told Mother that she missed her. *Id*. Following that visitation, Mother had a serendipitous telephone conversation with M.A.H. and H.N.H., who inquired whether they could visit her again. *Id*.

On August 2, 2018, the orphans' court convened a hearing on Father's petitions. Father testified on his own behalf, and presented the testimony of Ms. Weimer-Page, and Stepmother. Mother testified and called Colin Devanney, Mother's probation officer, and Maternal Grandmother to the witness stand. The orphans' court appointed counsel for M.A.H. and H.N.H.[3] Following the hearing, the orphans' court entered its findings on the record, concluding that Father established grounds for termination pursuant to § 2511(a)(1), but that termination of Mother's parental rights did not serve M.A.H.'s and H.N.H.'s needs and welfare pursuant to § 2511(b). The orphans' court entered orders denying the petitions on August 3, 2018. Father filed timely notices of appeal and concise statements of errors complained of on appeal.

_____

[3] The orphans' court initially appointed E.J. Rymsza, Esquire, as counsel for M.A.H. and H.N.H. Attorney Rymsza subsequently withdrew his appearance and the court appointed Brian Ulmer, Esquire, as counsel for the children by order dated May 25, 2018. During the evidentiary hearing, Attorney Ulmer indicated that he could not glean much information from his clients due to their respective ages, five and three. Ultimately, he argued in favor of terminating Mother's parental rights as serving the children's best interest. Attorney Ulmer's representation satisfies the dictates of 23 Pa.C.S. § 2313(a). *See In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) (mandate of § 2313(a) satisfied if counsel cannot ascertain child's preference due to immaturity).

He presents the following issues for our review:

1. Whether the trial court erred as a matter of law or abused its discretion by denying Father's petition to terminate Mother's parental rights because it concluded, without any supporting evidence, and contrary to 23 Pa.C.S. § 5326, that granting Father's petition would sever the childrens' [sic] relationship with their grandmother and half-sibling.[4]

2. Whether the trial court erred as a matter of law or abused its discretion by denying Father's petition when Father proved that terminating Mother's parental rights would serve the developmental, physical and emotional needs and welfare of the children.

Father's brief at 6-7.[5]  As Father's issues are interrelated, we address them together.

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial

---

[4] Father permits the children to visit Mother's older son, who maintains a close relationship with Father's father, M.A.H.'s and H.N.H.'s paternal grandfather. *See* N.T., 8/2/18, at 44.  The siblings occasionally visit their half-brother at the paternal grandfather's house. *Id*.

[5]  On October 24, 2018, Father filed a motion for *supersedeas* pending appeal seeking to stay the custody case between Mother and Father.  The motion asserted that Mother filed a petition to modify custody on August 8, 2018, seeking expanded custody rights to M.A.H. and H.N.H.  On October 26, 2018, Mother filed an answer to the motion.  By order dated October 29, 2018, this Court denied Father's motion for *supersedeas*.

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

Termination of parental rights is governed by § 2511 of the Adoption

Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the orphans' court denied Father's petitions to terminate

Mother's parental rights pursuant to § 2511(b). That paragraph provides as

follows:

**§ 2511. Grounds for involuntary termination**

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has stated that, while the focus of § 2511(a) is on the parent's behavior, the orphans' court's § 2511(b) analysis concentrates on the child's needs and welfare. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). In reviewing the evidence in support of termination under § 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*T.S.M.*, *supra* at 267.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, [§] 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it

part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa.Super. 2008).

We have emphasized that, while a parent's emotional bond with his or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the orphans' court when determining what is in the best interest of the child. *In re K.K.R.-S*, 958 A.2d 529 (Pa.Super. 2008). As we explained in *In re K.Z.S.*, *supra* at 763 (emphasis omitted),

> In addition to a bond examination, the court may equally emphasize the safety needs of the child under subsection (b), child neglect or abandonment, or children with special needs. The trial court should also examine the intangibles such as the love, comfort, security and stability the child might have with the continuity of relationship to the child and whether the parent child bond, if it exists, can be severed without detrimental effects on the child. All of these factors can contribute to the inquiry about the needs and welfare of the child.

*See also In re A.S.,* 11 A.3d 473, 483 (Pa.Super. 2010), (orphans' court can emphasize safety needs, consider intangibles, such as love, comfort, security, and stability child might have with foster parent, and importance of continuity of existing relationships).

Following the hearing, the orphans' court concluded that termination of Mother's parental rights would not meet the needs and welfare of M.A.H. and H.N.H. pursuant to § 2511(b). It issued the following rationale from the bench:

If I granted this petition, it would be cruel to legally end the relationship with . . . [M]aternal [G]randmother. It would be cruel to end the relationship with the half-sibling. Even if it wouldn't be cruel to end the relationship with who they know as their biological mother, . . . I would be terminating those [attendant relationships] and those people . . . would be solely at the whim of [Father,] and I will not do that. You have inflicted trauma on your children, [Mother], and you have a long [row] to hoe to overcome that and help them heal. I think [Father and Stepmother] are in a position, best position, to help th[e]se children learn and heal as they go through this process with their mother getting back involved in their lives.

. . . .

A lot of the things we discussed today address custody. There's absolutely no reason why . . . [Maternal Grandmother] shouldn't be able to supervise visits between the girls and their mom. I find it hard to believe that [Maternal Grandmother] would let a hair be plucked out of those little girls' heads if it was going to hurt them.

The children are thriving because of [Father and Stepmother], please continue that. Kids cannot have enough good role models, adult role models, and good relationships that they can follow and emulate and you seem to be providing that. Your ability to make the decisions regarding the grandmother and the half-sibling are commendable. If I terminate [Mother's] parental rights, it's undone and can never be redone. If I deny the petition and [Mother] does not fulfill the promises she's made, this [petition] can be re-filed at any point in time in the children's lives.

N.T., 8/2/18, at 142-43.

Father argues that the orphans' court erred in focusing on the children's

relationship with Maternal Grandmother. He contends that, pursuant to 23

Pa.C.S. § 5326, which we discuss *infra*, the termination of Mother's parental

rights would not marginalize any rights that Maternal Grandmother might have

- 11 -

to pursue custody after Mother's parental rights are terminated. Father's brief at 12. Thus, he contends that the orphans' court misspoke when it found that terminating Mother's parental rights would impact Maternal Grandmother's relationship with the children. *Id*. at 13. Further, Father claims that Mother has no bond with M.A.H. and H.N.H. and, based on that fact alone, the orphans' court erred in failing to terminate Mother's parental rights. *Id*. at 17. Counsel for M.A.H. and H.N.H. filed a brief that incorporates Father's argument, and asserts that the orphans' court abused its discretion in finding that Father would exclude Maternal Grandmother from the children's lives if Mother's rights were terminated. None of the foregoing contentions is persuasive.

The certified record supports the orphans' court's decision to deny Father's petitions to involuntarily terminate Mother's parental rights to their daughters pursuant to § 2511(b). Father highlights the abundant case law that requires an orphans' court to consider the bond that exists between a parent and their children prior to terminating parental rights, and assess the impact that terminating that bond would have on the children. However, his contention that the parent-child bond is the only valid consideration ignores the related case law that protects the relationship and substantial bond that the children share with Maternal Grandmother. As the orphans' court highlighted, the parent-child bond is only **one** of the factors the court must consider. The § 2511(b) analysis is broad. Ultimately, the orphans' court

must "give primary consideration to the developmental, physical and emotional needs and welfare of the child." **See** 23 Pa.C.S. § 2511(b).

Here, the orphans' court concluded that it was not in the best interest of M.A.H. and H.N.H. to alter their current situation. We discern no abuse of discretion. The orphans' court noted that the children recognize Mother as their biological parent, and we observe that both children displayed affection for Mother during their brief visit and requested to see her again. In addition to considering the limited interactions between Mother, M.A.H., and H.N.H., the orphans' court also observed that M.A.H. and H.N.H. are cognizant that Stepmother is not their "mom," and that they have a close relationship with their Maternal Grandmother, whose interactions with the children are governed closely by Father. Mindful of the intangible factors that we outlined in **In re A.S., supra**, such as the love, comfort, security, and stability that M.A.H. and H.N.H. share with Maternal Grandmother and the importance of maintaining those beneficial relationships, we find sufficient evidence in the certified record to sustain the orphans' court's best-interest analysis. **See In re K.Z.S.**, **supra** at 763 ("All of these factors can contribute to the inquiry about the needs and welfare of the child ").

In sum, while Mother's bonds with M.A.H. and H.N.H. were nominal given her prolonged absence from their lives, it is paramount to the children's wellbeing that we preserve the loving, stable relationships that they enjoy with Maternal Grandmother. The record confirms that Father's open-

handedness toward Maternal Grandmother is conditional and can be rescinded at his whim. Although Father has indicated an intention to continue to maintain that relationship, his continuing endorsement of that association is conditioned upon Maternal Grandmother's enduring promise to exclude Mother from her interactions with the children. Moreover, Father already demonstrated his willingness to erect barriers and withhold his daughters' contact from Mother when it suited his needs. Indeed, he went beyond the terms of the 2016 custody order to place conditions on Mother's custodial rights that she was unable to satisfy, and then he threatened Mother with arrest if she attempted to deliver gifts to the children at his house. Under these facts, we discern no abuse of discretion in the orphans' court's decision to promote the children's beneficial relationship with Maternal Grandmother over Father's desire to terminate Mother's parental rights.

In addition, as it relates to the orphans' court's reference to the harshness of "legally end[ing] the [children's] relationship with . . . [M]aternal [G]randmother," Father's reliance upon § 5326 is not fruitful. The pertinent section of the Child Custody Law provides:

> Any rights to seek physical custody or legal custody rights and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent prior to the adoption of the child by an individual other than a stepparent, grandparent or great-grandparent shall be automatically terminated upon such adoption.

23 Pa.C.S. § 5326

Principally, contrary to Father's protestations, this portion of the Custody Law does not convey any rights to Maternal Grandmother under the Adoption Act or preserve her legal status as a consanguineous relation following the entry of an adoption decree. It is beyond peradventure that "[a] decree of adoption terminates forever all relations between a child and his biological parents and severs the child entirely from its own family tree and engrafts it upon its new parentage." *In re Adoption of R.J.S.*, 889 A.2d 92, 100 (Pa.Super. 2005). Thus, by terminating Mother's parental rights, the orphans' court would effectively divest M.A.H. and H.N.H. of their rights to inherit or receive a financial benefit from Maternal Grandmother or her lineage. Section 5326 does not alter this reality.

Moreover, contrary to Father's characterization of § 5326, that proviso does not convey standing or custodial rights *per se*. Section 5326 simply protects what custodial rights that Maternal Grandmother might have at the time of Stepmother's anticipated adoptions. Instantly, Maternal Grandmother has no custodial rights to M.A.H. and H.N.H. Recall that Father bestows Maternal Grandmother monthly visitations with the children as a matter of grace, not of right. Furthermore, he conditions the privilege of visitation upon Maternal Grandmother's promise to exclude Mother from any form of contact with the children, whether or not the interaction is supervised. At most, § 5326 conveys to Maternal Grandmother the ability to seek standing to pursue a custody claim under 23 Pa.C.S. § 5324 or § 5325. However, the

- 15 -

applicability of either of these provisions is doubtful. For example, since Father maintains custodial rights, the children have not lived with Maternal Grandmother for twelve consecutive months, and are neither dependent nor at risk due to parental abuse or incapacity, § 5324 does not convey standing for Maternal Grandmother to seek physical or legal custody.[6] Similarly, as the

---

[6] In pertinent part, § 5324 provides:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> . . . .
>
> (3) A grandparent of the child who is not in loco parentis to the child:
>
> . . . .
>
> (iii) when one of the following conditions is met:
>
> (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
>
> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or
>
> (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.
>
> (4) Subject to paragraph (5), an individual who establishes by clear and convincing evidence all of the following:
>
> . . . .

termination of Mother's parental rights would resolve the underlying custody dispute conclusively, Maternal Grandmother could not utilize § 5325 as a basis to seek partial physical custody unless a custody court equates the Mother's divesture with her death.[7]   Since neither of the standing provisions in Child

_____

(iii) Neither parent has any form of care and control of the child.

23 Pa.C.S. § 5324.

[7] Pursuant to § 5325,

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section; or

(3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5325.

Custody Law appears to apply to Maternal Grandmother, we disagree with Father's assertions that § 5326 would protect the beneficial relationships that M.A.H. and H.N.H. share with Maternal Grandmother.

Thus, based on the evidence presented at the hearing, the orphans' court did not abuse its discretion when it denied Father's petitions to involuntarily terminate Mother's parental rights pursuant to § 2511 because termination would not serve the developmental, physical and emotional needs and welfare of M.A.H. and H.N.H. Accordingly, we affirm the orphans' court's orders denying the requested relief.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/05/2019